**Gary F. GEIBELS,**

v.

**CITY OF CAPE CORAL,
et al., Defendants.**

**No. 92–258–CIV–FTM–22D.**

United States District Court,
M.D. Florida.

Feb. 7, 1994.

Order and Opinion on Motion
for Reconsideration
March 2, 1994.

---

John C. Coleman, Coleman & Coleman, Ft. Myers, FL, for plaintiff.

John W. Lewis, Henderson, Franklin, Starnes & Holt, P.A., Ft. Myers, FL, for defendants City of Cape Coral and William Rivers.

Joseph Dee Stewart, Hardt & Stewart, Naples, FL, for defendants Bruce McNamara and Avatar Properties, Inc.

## ORDER

GAGLIARDI, Senior District Judge.

Plaintiff, Gary F. Geibels, sued Defendants, City of Cape Coral ("the City"), William Rivers ("Officer Rivers"), Bruce McNamara ("McNamara"), and Avatar Properties, Inc. ("Avatar"), on an amended complaint containing five counts. Count one alleged that Defendants were liable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights to free speech, assembly and petition, and to be free of arrest and prosecution without probable cause. Counts two and three alleged that the City and Officer Rivers, respectively, were liable for the state law tort of false arrest. Counts four and five together alleged that all Defendants were liable for the state law tort of malicious prosecution.

The case was tried to a jury on November 22, 1993. Plaintiff presented the testimony of himself, Frank Doell, who was assisting Plaintiff in soliciting petitions, and Defendants McNamara and Officer Rivers. On the fourth day of trial, prior to the close of Plaintiff's case, but after providing Plaintiff with the opportunity to make a proffer regarding the balance of his proof, Defendants' motions for judgment as a matter of law, Fed.R.Civ.P. 50(a)(1), on all counts were granted, and the action was dismissed for the reasons that follow.

## I. FACTUAL BACKGROUND

The facts, as developed by Plaintiff, were as follow. On Saturday, March 16, 1991 Plaintiff was arrested by Defendant Officer Rivers on the grounds of Defendant Avatar's Tarpon Point Marina ("TPM") in Cape Coral. TPM is a private marina which maintains boating and other facilities for the use of its members and their guests. Avatar had leased a portion of the grounds of TPM to a group calling itself the Desert Storm Rally Group ("Rally Group") for the period from noon until midnight on March 16. It was leased for the purpose of holding a rally to celebrate the return of the troops who took part in the just-concluded military action in the Persian Gulf region and to raise money for the troops. The activities at the rally included live rock and roll music and the sale of food, beverages and souvenirs. The agreement between Avatar and the Rally Group is memorialized in a "Permissive Use Agreement" (Plaintiff's Exhibit 3) which contains a legal description of the portion of TPM which was being leased to the Rally Group.

Plaintiff, who at the time was a Cape Coral city councilor, attended the rally to solicit petitions for a variety of city government and utility related political initiatives. Plaintiff's activities were completely unrelated to the purpose of the rally. One the organizers of the rally, Steven Berkowitz ("Berkowitz"), had nevertheless given Plaintiff permission to solicit signatures for the petitions at the rally. The location in which Plaintiff set up his tables, however, was not within the area leased to the Rally Group by Avatar. Plaintiff's efforts were part of an ongoing effort that he and Mr. Doell and others had undertaken to gather signatures for the various initiatives. On the day in question, they had come to TPM from collecting petitions in front of Cape Coral's city hall. They had solicited petitions at a number of other locations in the past as well.

Shortly after Plaintiff had set up his tables, a man approached Defendant McNamara, the manager of TPM, at his residence on the grounds of TPM. The man, who was crying, explained to McNamara that he was distraught because of Plaintiff's presence. The man told McNamara that he did not feel that Plaintiff's activities were appropriate at such an event.

As a result of this conversation, McNamara went to Berkowitz and asked him to have Plaintiff stop soliciting signatures. Though Berkowitz spoke to Plaintiff, Plaintiff did not leave as a result of their conversation. McNamara then spoke to Plaintiff and asked him to cease his activities and leave; Plaintiff refused. City police officers, including Defendant Rivers, arrived on the scene. As a result of the commotion, a crowd and representatives of the media, including a television crew, gathered in the area.

McNamara explained to the police officers that he was the manager of the property, that he had received complaints about Plaintiff's activities and that he had asked him to leave. Over the next hour, this same information was again conveyed by McNamara and the officers, together and separately, to Plaintiff. He continued to refuse to leave. Officer Kurt Grau then issued Plaintiff a written trespass warning which Plaintiff signed. Plaintiff continued to refuse to leave, and Officer Grau arrested him for trespassing after warning in violation of Florida Statutes, § 810.09(2)(b). Plaintiff was thereafter tried and acquitted of that charge.

Plaintiff also offered to prove the following: through Officer Rivers, that Officer Rivers had not ascertained whether Plaintiff had received permission from the Rally organizers to attend the rally and solicit petitions, certain aspects of police routine, and that the road accessing TPM had been dedicated to the City; through Officer Renny Wiersma, to prove certain aspects of police routine and that the public had access to the area in question; through Officer Kurt Grau, to prove that the public had access to the area and that the area was not within the exclusive control of Avatar; finally, through himself, that Plaintiff had visited TPM before and had had access to the road.

## II. DISCUSSION

Defendants are entitled to judgment as a matter of law because no reason-

able jury could conclude that Plaintiff's constitutional rights were violated as a result of the actions taken by the City's police officers in arresting him or prosecuting him or that he was falsely arrested or maliciously prosecuted. Plaintiff had no First Amendment right to solicit petitions at the location at which he was arrested because that location was private property. *Lloyd v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). Plaintiff's offer of proof regarding the access road is irrelevant because Plaintiff was not located there and because he did not offer to prove that the road was public property.

■ Although the First Amendment provides protection for activity undertaken on private property in limited circumstances, *see id.; Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), none of those circumstances was shown to have existed in this case. Plaintiff's basis for claiming that his activities were protected by the First Amendment was that the Rally Group's activities were of a public nature. This argument has two flaws. First, Plaintiff was not on the property leased to the Rally Group; second, Plaintiff's activities were unrelated to the public purpose to which the Rally Group was putting the property, *see Lloyd,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). In any event, Plaintiff had myriad alternatives which he could have, and had already, utilized to communicate his message. *See Id.* Plaintiff's activities did not enjoy First Amendment protection under the circumstances described by presentation of Plaintiff's evidence. Defendants, therefore, are entitled to judgment as a matter of law on Plaintiff's claim under 42 U.S.C. § 1983 that his First Amendment rights were violated.

■ Neither were Plaintiff's constitutional rights to be free of arrest or prosecution without probable cause violated. Plaintiff was arrested for trespassing after warning in violation of Florida Statutes, chapter 810.09 (1992). That chapter reads in pertinent part as follows:

(1) Whoever, without being authorized, licensed or invited, willfully enters upon or remains in any property other than a structure or conveyance ... commits the offense of trespass on property other than a structure or conveyance.

(2)(a) Except as provided in this subsection, trespass on property other than a structure or conveyance is a misdemeanor of the first degree....

(b) If the offender defies an order to leave, personally communicated to him by the owner of the premises or by an authorized person ... he is guilty of a misdemeanor of the first degree....

Fla.Stat., ch. 810.09.

There was probable cause to arrest and prosecute Plaintiff for trespassing after warning. The police had been informed of McNamara's position as manager of TPM and he had informed them that Plaintiff had not been invited, authorized, or licensed to be on TPM's property. The officers witnessed McNamara's request that the Plaintiff leave, notified him of his trespasser status, and secured his signature on a trespass warning themselves. They then arrested him when he once again refused to comply with their order to leave. These facts comprise probable cause to arrest and prosecute for the offense of trespassing after warning. Therefore, Plaintiff's constitutional rights to be free of arrest and prosecution without probable cause were not violated, and Defendants are entitled to judgment as a matter of law on Plaintiff's claim under 42 U.S.C. § 1983.

Because there was probable cause to arrest and prosecute Plaintiff, Defendants are also entitled to judgment as a matter of law on the appended state law claims of false arrest and malicious prosecution. Let the clerk enter judgment accordingly.

So Ordered.

## ORDER & OPINION

Plaintiff, Gary F. Geibels, moves the Court for a new trial pursuant to Fed.R.Civ.P. 59(a) or alternatively for the Court to reconsider its decision granting Defendants judgment as a matter of law on all claims. This case was dismissed on Defendants' motion for judgment as a matter of law, Fed.R.Civ.P. 50(a)(1) (hereinafter "Rule 50(a)(1)"), at the close of Plaintiff's case, which was completed

through an offer of proof outside the presence of the jury. There is no basis for a new trial, therefore, the motion for a new trial is denied. The motion to reconsider the decision granting judgment as a matter of law is granted, but the Court adheres to its original decision.

In his motion, Plaintiff restates substantive arguments made at trial which have previously been addressed. The only new argument he raises is a procedural one. Plaintiff argues that it was not appropriate for the Court to grant judgment as a matter of law because Plaintiff had not been "fully heard" under Rule 50(a)(1).

Rule 50(a)(1) states that

[i]f during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

*Federal Civil Judicial Procedure and Rules,* Fed.R.Civ.P. 50(a)(1) (West Publishing Co. Ed., Supp.1993). The motion "may be made at any time before submission of the case to the jury." Fed.R.Civ.P. 50(a)(2). The advisory committee notes for the 1991 amendment state that the rule "authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case." West Publishing Co., *supra,* at 160. The committee notes also state that "[i]n no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact." *Id.*

Although courts were encouraged to delay ruling on "directed verdict" motions under the old version of Rule 50(a), 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (1971), until the close of the evidence or thereafter, *e.g., Therrell v. Georgia Marble Holdings Corp.,* 960 F.2d 1555 (11th Cir.1992), they were empowered to do so "at any point in the trial where it is apparent that there is a complete absence of any question to send to the jury," *United States v. Vahlco Corp.,* 720 F.2d 885 (5th Cir.1983) (relying on *Best v. District of Columbia,* 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882 (1934) ("There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where the statement establishes that the plaintiff has no right to recover. The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced.")); 9 Wright & Miller, *supra,* § 2533.

The amendments to Rule 50(a)(1) which altered the nomenclature from "directed verdict" to "judgment as a matter of law" do not affect the holdings in *Best* or *Vahlco.* The changes are essentially related only to terminology, Wright & Miller, *supra,* § 2521 (Supp.1993), and "the interpretive rules that developed with respect to directed verdicts apply with equal force to judgments as a matter of law." *Pan Am. World Airways v. Port Auth. of N.Y. & N.J.,* 995 F.2d 5, 8 (2d Cir.1993).

In this case, it was apparent that there was no question for the jury after a significant portion of Plaintiff's case was presented and he had made a proffer of the balance of his case. Plaintiff was "apprised of the materiality of the dispositive fact[s and] afforded an opportunity to present any available evidence bearing" on them. West Publishing Co., *supra,* at 160. Plaintiff was repeatedly apprised of the issues the Court believed exposed him to dismissal. Prior to ruling, Plaintiff was specifically informed by the Court of the issues upon which the Court was contemplating granting Defendants' motion for judgment as a matter of law. Plaintiff's offer of proof did not indicate that Plaintiff would present evidence which would create a question for the jury on these issues.

Plaintiff argues that the ruling was premature because he was only allowed to make an offer of proof, rather than produce the corresponding evidence, prior to the Court's ruling. Plaintiff did not have a right to use valuable judicial resources to introduce, rather than proffer, evidence. *Perfit v. Perfit,* 693 F.Supp. 851 (C.D.Cal.1988) (holding that

it was appropriate to consider and rule on the defendant's motion for directed verdict at close of the plaintiff's case where it was completed by offer of proof) (citing *Best,* 291 U.S. 411, 54 S.Ct. 487 & *Vahlco,* 720 F.2d 885); *see Payne v. Capital Transit Co.,* 181 F.2d 613 (D.C.Cir.1950) (holding that district court did not abuse its discretion when it ruled on a directed verdict motion prior to appearance of a proposed plaintiff's witness where it heard a proffer of the witness's expected testimony). Plaintiff was fully apprised of the issues which exposed him to an unfavorable Rule 50(a)(1) ruling and offered the opportunity to make an offer of proof with respect to those issues. No purpose would have been served by allowing Plaintiff to produce the evidence upon which his proffer was based.

Because it was apparent that Plaintiff could not carry his burden of proof on essential elements of each of his claims, Defendants' motion for judgment as a matter of law was granted. Therefore, the Court adheres to its original decision.

So Ordered.